IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SONDRA COMERINSKY,            *
                             *
        Plaintiff,           *
                             *
        v.                   *          CV 118-198
                             *
AUGUSTA COATING AND          *
MANUFACTURING, LLC and BOB   *
ROGERS,                      *
                             *
        Defendants.          *
                             *

_____

**O R D E R**

_____

This employment discrimination case arises from Plaintiff
Sondra Comerinsky's employment with Defendant Augusta Coating and
Manufacturing, LLC ("ACM"). Before the Court is Defendants ACM
and Bob Rogers' motion to dismiss for failure to state a claim.
For the reasons set forth below, Defendants' motion to dismiss is
**GRANTED IN PART AND DENIED IN PART.**


## I. BACKGROUND

Plaintiff began her employment with ACM in September 2015 as
a Purchasing Assistant. (Am. Compl., Doc. 20, ¶ 10.) Plaintiff's
supervisor was Purchasing Manager Defendant Bob Rogers, who
allegedly harassed Plaintiff based on her gender. (See id. ¶¶ 11-
36.) Despite multiple attempts to report Rogers to ACM's Human
Resources ("HR") department, Plaintiff alleges nothing was done to

prevent further harassment, which eventually led Plaintiff to quit her job in the summer of 2018. (See id. ¶¶ 17-18, 21-23, 27-29, 37.)

Plaintiff alleges that "almost immediately" after the start of her employment Rogers "began verbally abusing her." (Id. ¶ 11.) He often called Plaintiff an "'ignorant, stupid Yankee,'" a "'dumbass,'" "'stupid,'" or he would say that she was "'slow.'" (Id. ¶¶ 11, 14-15, 19.) These comments were made on a "daily basis." (Id. ¶¶ 15, 19, 31.) Further, Rogers' insults would normally occur during outbursts where he was "screaming" at Plaintiff about her work performance or other perceived problems. (Id. ¶¶ 11, 30-31.)

Plaintiff also alleges Rogers made numerous discriminatory comments about women. Rogers told Plaintiff that "he liked it back when women did what they were told without question." (Id. ¶ 17.) After Plaintiff was in a car accident that caused a back injury, Rogers made rude comments to ACM vendors about Plaintiff including "'she killed her last brain cell so she's now slow if you know what I mean. Make sure if you see her driving to get off the road!'" (Id. ¶ 14.) Next, Rogers said to Plaintiff "'I thought you women were supposed to be able to multitask at least 100 things at a time – what is your problem, dumbass?'" (Id. ¶ 15.)

Eventually, Rogers became physical with Plaintiff during his outbursts. In October 2016, Rogers was upset with Plaintiff about a purchase order. (Id. ¶ 16.) When Plaintiff tried to hand Rogers a copy of the purchase order, he slapped it out of her hand leaving scratches and bruises. (Id.) In January 2017, Rogers demanded Plaintiff print a purchase order that he accused her of making a mistake on. (Id. ¶ 20.) When Plaintiff tried to give the order to Rogers, he slapped the document from her hands causing scratches and bruises. (Id.) In March 2017, Plaintiff and ACM's QA Manager were discussing an issue on the production floor. (Id. ¶¶ 24-25.) During that conversation, Rogers came behind Plaintiff, grabbed her by the arm, and pulled her away. (Id. ¶ 25.) The QA Manager intervened by stepping between Plaintiff and Rogers and instructing Plaintiff to return to her office. (Id.) As Plaintiff walked away, Rogers began "screaming" that he was "'not done with her.'" (Id.) This incident left a bruise on Plaintiff's arm that she alleges took nearly two months to heal. (Id.)

Plaintiff details two other similar incidents. First, in December 2017, Rogers began yelling at Plaintiff about a customer order. (Id. ¶ 30.) While Plaintiff discussed the issue with another employee over the phone, Rogers told Plaintiff to "'get off the fucking phone now.'" (Id.) Even when Plaintiff told Rogers she resolved the issue he said "'I don't give a fuck'" and "came at Plaintiff with an open hand as if he was going to hit

her." (Id.) A few months prior, Rogers walked into Plaintiff's office after working on the production floor. (Id. ¶ 27.) He stated, "'Sandy it's hot out on the plant floor and I'm all sweaty. Get over here and feel me.'" (Id.) When Plaintiff refused, Rogers insisted, "'I said get up and put your hand up the back of my shirt and feel how sweaty I am!'" (Id. ¶ 27.) Plaintiff alleges this was not an isolated incident. (Id. ¶ 28.)

Plaintiff further alleges that Rogers withheld breaks from her, forced her to work off the clock, and demanded she run personal errands for him. (Id. ¶¶ 12, 19, 32-33.) On March 6, 2018, Rogers forced Plaintiff to end her lunch break early to call a customer. (Id. ¶ 32.) When Plaintiff attempted to clock back in, Rogers told her "I don't give you permission to clock in early. You fucked this up. You do as I said now!" (Id.) Thereafter, Rogers "routinely" forced Plaintiff to work through her lunch break, but still required her to clock out for an hour. (Id. ¶ 33.) Finally, Plaintiff contends Rogers commanded her to carry heavy boxes despite a documented back injury.[1] (Id. ¶ 28.) When Plaintiff protested, Rogers insisted she move the boxes herself and not receive help from anyone else. (Id.) Plaintiff repeatedly alleges that Rogers did not insult, ridicule, withhold breaks,

---

[1] ACM's HR Director and other managers instructed Plaintiff to not do any lifting and provided a special lumbar support office chair to her. (Am. Compl., ¶ 26.)

4

disregard medical restrictions, or become physical with any male employees. (Id. ¶¶ 11-12, 14-16, 19-20, 30, 33.)

Plaintiff made multiple complaints to ACM's HR Manager Sarah[2] about Rogers' conduct. After both incidents where Rogers slapped documents from Plaintiff's hand, she complained to the HR Manager and showed her injuries. (Id. ¶¶ 17, 20-21.) Although the HR Manager promised to talk with Rogers, she never did, and often told Plaintiff "'that's Bob being Bob.'"[3] (Id. ¶ 21, 28.) When Plaintiff informed the HR Manager about Rogers' request that Plaintiff rub his sweaty back, the HR Manager laughed and dismissed the complaint. (Id. ¶ 28.) In late 2017, Plaintiff twice approached ACM's Operations Manager Mike Welsh with complaints about Rogers' conduct; both times Welsh never took any action. (Id. ¶¶ 27, 29.)

In the spring of 2018, Plaintiff's boyfriend contacted ACM management about Rogers' behavior and sent a text message directly to Rogers stating: "'I just want to let you know that if you raise your voice with her one more time you will have the job to do by yourself. She is not going [sic] continue to be abused at work by you.'" (Id. ¶ 34.) The next day, Plaintiff was told that her boyfriend should not get involved in work matters and she should resolve her issues directly with Rogers instead of involving other

---

[2] Plaintiff's Amended Complaint does not include Sarah's last name.
[3] The HR Manager also discouraged Plaintiff from filing any police report about the physical incidents with Rogers. (Id. ¶ 18.)

managers. (Id. ¶ 35.) The HR Manager also called a meeting with Plaintiff and Rogers. (Id. ¶ 36.) At this meeting, the HR Manager characterized the text message as "a direct threat on Rogers' life" and issued a written warning to Plaintiff. (Id.) Further, Rogers told Plaintiff she needed to raise any problems solely with him; the HR Manager agreed with Rogers' statement. (Id.) Shortly thereafter, Plaintiff quit her job and filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶¶ 37–39.)

Plaintiff brings federal and state law claims against Rogers and ACM. Plaintiff alleges a claim for hostile work environment and retaliation under Title VII.[4] (See id. ¶¶ 67–75.) Her state law claims include battery against Rogers; negligent retention and supervision, ratification, gross negligence and negligence *per se* against ACM; and intentional infliction of emotional distress, punitive damages, and attorney's fees against both Defendants. (See id. ¶¶ 40–66.)

---

[4] Defendants' motion to dismiss construes the Amended Complaint to bring a claim for disparate treatment. However, Plaintiff's response brief makes no attempt to address Defendants' arguments to dismiss a disparate treatment claim. Further, it is not clear that Plaintiff plead such a claim. In Count VIII of the Amended Complaint titled "Sex Discrimination and Harassment in Violation of Title VII," Plaintiff specifically alleges she was "subjected to a hostile work environment" from "severe and/or pervasive unwelcome statements and conduct by Defendant Rogers that substantially interfered with the terms and conditions of her employment." (Am. Compl., ¶¶ 68–69.) Nowhere in Count VIII, or the rest of the Amended Complaint, does Plaintiff make even a "threadbare recital" of the elements of a disparate treatment claim. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, the Court does not consider the Amended Complaint to plead a claim for disparate treatment.

Plaintiff already amended her complaint as a matter of course in response to Defendants' first motion to dismiss.[5] Currently before the Court is Defendants' renewed motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 23.)

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required

---

[5] Because Plaintiff amended her complaint, Defendants' first motion to dismiss (Doc. 13) is **DENIED AS MOOT**.

to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Id_. Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." _Twombly_, 550 U.S. at 556-57 (citing _Durma Pharm., Inc. v. Broudo_, 544 U.S. 336, 347 (2005)).

## III. DISCUSSION

Defendants' motion to dismiss challenges each of Plaintiff's claims in the Amended Complaint. First, Defendants seek dismissal of Plaintiff's Title VII claims against Rogers. Second, Defendants argue Plaintiff has not alleged facts to satisfy the necessary elements for her Title VII claims. Third, Defendants move to dismiss all the state law claims based on jurisdiction and statute of limitations. Finally, Defendants argue Plaintiff has not alleged sufficient facts to state a claim for negligence _per se_.

### A. Individual Liability Under Title VII

Plaintiff's Amended Complaint does not clearly state whether her Title VII claims are made against ACM, Rogers, or both, nor does she state whether Rogers is sued in his individual capacity or as an agent of ACM. Defendants raise this issue in their motion to dismiss and request the Court dismiss all Title VII claims against Rogers. Plaintiff's response brief makes no attempt to

address this argument or clarify the ambiguities of the Amended Complaint.

"The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991). Consequently, "the only proper individual defendants in a Title VII action would be supervisory employees in their capacity as agents of the employer." Hinson v. Clinch Cty. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000). Accordingly, to the extent Plaintiff brings Title VII claims against Rogers in his individual capacity, those claims are dismissed.

## B. Hostile Work Environment

To bring a hostile work environment claim under Title VII, an employee must allege harassment "sufficiently severe or pervasive to alter the conditions of [her] employment." Pa. State Police v. Suders, 542 U.S. 129, 131 (2004). This requires the employee to allege the following:

> (1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).

A viable hostile work environment claim requires the plaintiff to allege the "workplace is permeated with discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted). To that end, there must be some factual basis to show the alleged harassment was based on the employee's protected characteristic, such as gender. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1245-46 (11th Cir. 1999).

Defendants first argue that Plaintiff does not allege facts to show Rogers' alleged harassment was gender-based. In Defendants' view, Rogers calling Plaintiff "stupid," "ignorant," a "dumbass," and the various similar incidents was not harassment based on Plaintiff's gender. However, those comments do not exist in a vacuum. Rather, they must be viewed in the context of Rogers' multiple statements displaying a discriminatory attitude towards women. See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (en banc) ("Workplace conduct is not measured in isolation . . . . [T]he evidence of harassment is considered both cumulatively and in the totality of the circumstances." (internal quotation omitted)).

In three separate instances, Rogers stated he "liked it back when women did what they were told without question," told Plaintiff, "I thought you women were supposed to be able to multitask at least 100 things at a time — what is your problem, dumbass," and made comments that could be reasonably construed to promote the stereotype that women were less capable drivers than men. (See Am. Compl., ¶¶ 14-15, 17.) A reasonable inference from these comments is that Rogers thought women were not as smart or capable as men and that they should play a subservient role. Moreover, Rogers' subsequent comments disparaging Plaintiff's intelligence or capabilities, although perhaps not discriminatory on their face, are in line with his previously expressed discriminatory view of women.

Defendants cite several cases to support their proposition that, except for the three statements just mentioned, none of Rogers' comments or physical actions can be considered in Plaintiff's hostile work environment claim. Defendants rely on Edwards v. Prime, Inc., 602 F.3d 1276 (11th Cir. 2010), where the court determined that although the plaintiff alleged he was "threatened, assaulted, and shunned by his Hispanic and Latino co-workers," he did "not plausibly allege that he was harassed because he is Caucasian." Id. at 1301. That case is distinguishable, however, because the plaintiff specifically alleged the harassment he endured was motivated by his complaints to management about the

employment of illegal aliens, not because of his race. Here, Plaintiff repeatedly alleges the harassment was related to her gender and the Amended Complaint includes no other obvious explanation for Rogers' behavior.[6] Further, the multiple comments Rogers made about the intelligence of women or their role in the workplace are consistent with the insults he directed at Plaintiff during his frequents outbursts.

Similarly, in Palmer v. McDonald, 624 F. App'x 699 (11th Cir. 2015) (per curiam), the plaintiff alleged no instances in which his race or national origin was "explicitly mentioned." Id. at 704. Conversely, Plaintiff alleges three comments made by Rogers that mention her gender, all three of which cast women in a negative light.

Simply put, Defendants' argument that the alleged harassment was not related to Plaintiff's gender assumes too much. Although Rogers did not explicitly state Plaintiff was "stupid" *because* she was a woman in every instance, the Court cannot view those statements in isolation. Instead, Rogers' insults must be viewed in the context of his earlier statements that disparage women's intelligence and call for them to be subservient to men in the

---

[6] In Edwards, the plaintiff brought claims under the Racketeer Influenced and Corrupt Organizations Act and the Fair Labor Standards Act challenging the defendant's practice of hiring allegedly illegal aliens. See 602 F.3d at 1284. The hostile work environment and other employment discrimination claims grew out of his complaints about the defendant employing illegal aliens. See id. at 1286. In this case, Plaintiff only alleges employment discrimination and related state law claims.

workplace. Accordingly, construing the facts in the light most favorable to Plaintiff, the Court concludes the Amended Complaint includes sufficient facts to plausibly allege Rogers' harassment of Plaintiff was motivated by her gender.

Defendants also challenge the Amended Complaint based on its failure to allege harassment that is sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment. On this element, the employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms and conditions of employment.[7] Mendoza, 195 F.3d at 1246 (quoting Harris, 510 U.S. at 21–22). The conduct must also be objectively severe and pervasive enough to alter the terms and conditions of employment, considering all the circumstances. Id. Under the objective inquiry, courts consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

As to the frequency factor, Plaintiff alleges Rogers' harassment occurred "on a daily basis." (Am. Compl., ¶ 15.) Rogers "constantly" called Plaintiff "stupid" or "ignorant," and regularly referred to her as a "stupid Yankee." (Id. ¶¶ 11, 15,

---

[7] Neither party addresses the subjective element; however, it is clear Plaintiff alleged facts to show she subjectively perceived the harassment as severe and pervasive considering her multiple complaints about Rogers' conduct.

13

19.) With respect to specific examples, Plaintiff details at least eleven incidents of harassment over her two-year employment at ACM. These eleven incidents supplement Plaintiff's allegations that Rogers' "verbal abuse" occurred "daily." (Id. ¶¶ 19, 31.)

With respect to severity, Plaintiff alleges multiple facts to show that Rogers' conduct went beyond "the sporadic use of abusive language, gender-related jokes, and occasional teasing" that is not actionable under Title VII. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). For example, Rogers' outbursts typically involved screaming obscene language and insults at Plaintiff. The alleged harassment eventually escalated three incidents in which Rogers became physical with Plaintiff.

The third factor is particularly instructive in this case. Plaintiff alleges Rogers twice slapped documents from Plaintiff's hand and once forcefully grabbed her by the arm. Each of these three incidents caused physical injuries. These allegations show that Rogers' conduct was more than physically threatening, it escalated to actual physical contact. Moreover, there is at least one other incident that can be considered physically threatening. In December 2017, Rogers began screaming and cursing at Plaintiff over a customer order and came at her "with an open hand as if he was going to hit her." (Am. Compl., ¶ 30.)

Rogers also engaged in conduct that can be considered humiliating to Plaintiff. Rogers told ACM vendors that Plaintiff

14

was "slow" and insinuated she and other women were bad drivers. Moreover, the regularity and severity of Rogers' insults raises those comments above mere offensive utterances and into conduct that is actionable under Title VII. All told, this factor heavily favors Plaintiff.

Finally, the Amended Complaint includes concrete examples of how the alleged harassment changed the terms and conditions of Plaintiff's employment. Over the course of Plaintiff's two years at ACM, Rogers' name-calling worsened, and his outbursts were sometimes accompanied by physical acts. Furthermore, Rogers began forcing her to work through lunch breaks off the clock, run personal errands for him, and perform tasks against medical advice. Taking Plaintiff's allegations as true, the Court concludes that the alleged harassment was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment. Overall, Plaintiff alleged sufficient facts to support a plausible claim for hostile work environment. Therefore, Defendants' motion to dismiss that claim is denied.

## C. Retaliation

Under Title VII, it is unlawful to discriminate against any individual for engaging in a statutorily protected activity, such as filing a charge of discrimination with the EEOC or using an employer's internal grievance procedure. 42 U.S.C. § 2000e-3(a); see also Rollins v. State of Fla. Dep't of Law Enf't, 868 F.2d

15

397, 400 (11th Cir. 1989). A prima facie case of retaliation requires a plaintiff to prove that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two. Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

Defendants first contend that Plaintiff failed to allege she engaged in protected activity because she did not have an objectively reasonable belief that Rogers engaged in gender-based discrimination. According to Defendants, Plaintiff did not identify any similar situated male employees that Rogers treated more favorably, and therefore, is was not objectively reasonable for her to think Rogers engaged in unlawful discrimination.

Utilizing an employers' internal grievance procedures or informally voicing complaints to supervisors qualifies as protected activity under Title VII. Rollins, 868 F.3d at 400. An employee claiming retaliation must have "a good faith, reasonable belief that the employer has engaged in unlawful employment practices." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).

In this case, Plaintiff complained about Rogers' harassing behavior to ACM's HR Manager and Operations Manager. During these complaints, Plaintiff detailed Rogers' comments disparaging women, the physical incidents, and pointed out that Rogers did not treat male employees this way. As shown above, Plaintiff has plead a

16

viable gender-based hostile work environment claim. Thus, it was objectively reasonable for her to believe that Rogers engaged in an unlawful employment practice when she made the complaints.

Next, Defendants argue that Plaintiff did not suffer an adverse employment action. Under Title VII's anti-retaliation provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67-68 (2006). In the retaliation context, materially adverse "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (internal quotation omitted). The Supreme Court emphasized that "[c]ontext matters" when analyzing what constitutes an adverse employment action. See id. at 69 ("[T]he significance of any given act of retaliation will often depend upon the particular circumstances.").[8]

Plaintiff argues she suffered an adverse employment action from the written warning she received after her boyfriend texted Rogers. Although reprimands are not, *per se*, materially adverse changes under Title VII, they may qualify as adverse employment actions under the particular circumstances of a case. See Rayner v. Dep't of Veterans Affairs, 684 F. App'x 911, 915 (11th Cir. 2017) (citing Burlington, 548 U.S. at 69.)

---

[8] The "more liberal view of what constitutes an adverse employment action" adopted by the Supreme Court in Burlington applies only to Title VII retaliation claims and "has no application to substantive Title VII discrimination claims." Crawford, 529 F.3d at 974 n.14.

Plaintiff alleges that at the meeting where she received the written warning, Rogers and the HR Manager required Plaintiff to raise all future harassment complaints solely with Rogers. The context of this meeting is important. Plaintiff and Rogers were brought together by the HR Manager to discuss Plaintiff's ongoing issues. Instead of addressing the harassment, the HR Manager issued a written warning to Plaintiff for her boyfriend's text message and instructed Plaintiff to raise all future harassment complaints with Rogers. Thus, after the meeting and written warning, "there was no recourse for her within ACM besides going to her harasser." (Am. Compl., ¶ 37.) Shortly after the meeting, Plaintiff ended her employment with ACM.[9]

By viewing the facts in the light most favorable to Plaintiff, the Court concludes that restricting Plaintiff's ability to raise harassment complaints and issuing her a written warning may have dissuaded a reasonable worker from making or supporting a charge of discrimination. Therefore, Plaintiff plead sufficient facts to state a plausible claim for retaliation under Title VII. As such, Defendants' motion to dismiss Plaintiff's retaliation claim is denied.

---

[9] Plaintiff makes no attempt to plead a claim for constructive discharge under Title VII or argue that such a claim may be viable.

## D. State Law Claims

Defendants request the Court decline jurisdiction on Plaintiff's state law claims after dismissing all federal claims. However, as shown above, Plaintiff has plead a viable claim for hostile work environment and retaliation under Title VII. Consequently, under 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's state law claims that arise from the same facts as her federal claims.

### 1. Statute of Limitations

Defendants contend that the statute of limitations bars Plaintiff's state law claims that arose more than two years prior to Plaintiff filing this action.[10]   In Georgia, personal injury claims, such as the claims made here, are subject to a two-year statute of limitations.  O.C.G.A. § 9-3-33; M.H.D. v. Westminster Schs., 172 F.3d 797, 803 (11th Cir. 1999) (personal injury claims such as "assault, battery, intentional infliction of emotional distress, and negligence all constitute claims of injury to the individual, and therefore are governed by section 9-3-33").

Plaintiff's brief does not include any arguments responding to Defendants' statute of limitations defense.  In fact, Plaintiff completely omits any arguments about her state law claims.  Courts

---

[10] Defendants make no attempt to identify which claims are supported by actions or inactions that occurred before November 8, 2016, nor do they mention any specific facts that should not be considered.

in the Eleventh Circuit and elsewhere find that a plaintiff's "failure to respond is in itself grounds for the Court to rule in favor of defendant." Brown v. J.P. Turner & Co., 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011); see, e.g., Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding plaintiff abandoned claim by failing to defend it in response to a motion to dismiss); Thompson v. United States, 2019 WL 149553, at *7 n.4 (S.D. Ga. Jan. 9, 2019); Kirkland v. Cty. Comm'n of Elmore Cty., 2009 WL 596538, at *2 (M.D. Ala. Mar. 6, 2009) (collecting cases).[11]

Even if Plaintiff offered a response, it is not apparent how she could successfully refute Defendants' argument. Plaintiff filed this action on November 8, 2018, so any claims that accrued before November 8, 2016, are untimely under the applicable two-year limitations period. However, the statute of limitations does not entirely bar Plaintiff's state law claims. Rather, it only bars claims based on events that occurred before November 8, 2016. See Tomczyk v. Jocks & Jills Rest., LLC, 198 F. App'x 804, 814-15 (11th Cir. 2006) ("There is no basis for concluding that a plaintiff who fails to file her complaint in time to cover all of the tortious conduct inflicted on her is barred from seeking relief for that which is inflicted during the limitations period.").[12]

---

[11] The Court's Local Rules provide: "Failure to respond within the applicable time period shall indicate that there is no opposition to a motion." L.R. 7.5.
[12] For example, Plaintiff cannot base her battery claim on the October 2016 episode, but she also alleges two other physical incidents in January and March 2017 that could support the claim. Moreover, negligent retention claims based on an employer's negligence in retaining the plaintiff's alleged harasser

Therefore, Defendants' motion to dismiss is granted as to Plaintiff's state law claims based on actions occurring more than two years prior to November 8, 2018.

### 2. Negligence *Per Se* Claim

Finally, Defendants seek dismissal of Plaintiff's negligence *per se* claim because she failed to allege a violation of any statute or regulation. Again, Plaintiff makes no attempt to respond to this argument.

Under Georgia law, negligence *per se* arises when a defendant violates a statute or ordinance, satisfying, as a matter of law, the first two elements of a negligence claim. Hubbard v. Dep't of Transp., 256 Ga. App. 342, 349 (2002). The plaintiff must point to a statute, ordinance, or regulation that imposes a legal duty. See id. at 350. Further, the plaintiff must fall into the class of persons the statute was intended to protect and suffer the harm the statute was intended to guard against. Id.

Here, Plaintiff does not allege what statute, ordinance, or regulation Defendants violated. The Amended Complaint only makes conclusory allegations that Defendants violated O.C.G.A. §§ 51-1–4 and 51-1-8. However, neither of those statutes impose a legal duty. O.C.G.A. § 51-1-8 is a general tort statute that "operate[s] in conjunction with a statute . . . that imposes a legal duty but

---

accrue, at the latest, on the last day of the plaintiff's employment. See Harris v. Fulton-DeKalb Hosp. Auth., 255 F. Supp. 2d 1347, 1374 (N.D. Ga.), aff'd, 48 F. App'x 742 (11th Cir. 2002).

does not expressly provide a cause of action." See Bellsouth
Telecomm., LLC v. Cobb Cty., 342 Ga. App. 323, 329 (2017), rev'd
on other grounds, 305 Ga. 144 (2019); see also Reilly v. Alcan
Aluminum Corp., 272 Ga. 279, 280 (2000) (Section 51-1-8 "merely
set[s] forth general principals of tort law"). That statute
cannot, by itself, form the basis of a negligence *per se* claim
because it imposes no legal duties.

Similarly, O.C.G.A. § 51-1-4 does not create a legal duty, it
merely defines "slight diligence" and "gross negligence" under
state law. To state a claim, Plaintiff must allege violation of
a statute that imposes a legal duty. See, e.g., Bellsouth, 305
Ga. 144, 153-55 (analyzing whether provision of Georgia Emergency
Telephone Number 911 Service Act gave rise to a legal duty); Wells
Fargo Bank, N.A. v. Jenkins, 293 Ga. 162, 165 (2013) (considering
whether provision of Gramm-Leach-Bliley Act gave rise to a legal
duty); Reilly, 272 Ga. at 280 (evaluating whether Georgia's age
discrimination statute gave rise to a legal duty). Plaintiff's
reliance on general tort provisions is insufficient to maintain
her negligence *per se* claim.

Moreover, Plaintiff cannot invoke Title VII as the statute
underlying her negligence *per se* claim. See Owens v. Gen. Elec.
Co., 2010 WL 11493297, at *4-6 (N.D. Ga. Jan. 20, 2010) (citing
Reilly, 272 Ga. at 280.) Title VII already creates a cause of
action, and Plaintiff asserted claims under that remedial scheme,

so she cannot maintain a "duplicative" remedy under state law. See id.; see also Higdon v. Jackson, 393 F.3d 1211, 1221-22 (11th Cir. 2004) (holding the plaintiff could not maintain a negligence *per se* claim by alleging a violation of the Americans with Disabilities Act). Accordingly, Defendants' motion to dismiss Plaintiff's negligence *per se* claim is granted.

## IV. CONCLUSION

In accordance with the foregoing, Defendants' motion to dismiss (Doc. 23) is **GRANTED IN PART AND DENIED IN PART**. The parties are **DIRECTED** to confer and submit a Rule 26(f) Report, with proposed case deadlines, within seven days of the entry of this Order, as required by the Court's June 3, 2019 Order. (Doc. 33.) Finally, Defendants' motion to dismiss Plaintiff's original Complaint (Doc. 13) is **DENIED AS MOOT**.

**ORDER ENTERED** at Augusta, Georgia, this 3rd day of September, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA